IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Miscellaneous Action No. 17-mc-00170-PAB

MEDICINAL WELLNESS CENTER, LLC, a Colorado Limited Liability Company,
MEDICINAL OASIS, LLC, a dissolved Colorado Limited Liability Company,
MICHAEL ARAGON,
JUDY ARAGON, and
STEVEN HICKOX,

      Petitioners,

v.

UNITED STATES OF AMERICA, through its agency the Internal Revenue Service,

      Defendant.
_____

**ORDER**
_____

      This matter is before the Court on petitioners' Petition to Quash Summonses

[Docket No. 1] and the United States' Motion to Dismiss Petition and Enforce

Summonses [Docket No. 3].

## I. BACKGROUND

      The Internal Revenue Service ("IRS") is conducting a civil audit of petitioners

Medicinal Wellness Center, LLC, and Medicinal Oasis, LLC's tax liability for fiscal years

2014 and 2015. Petitioners Michael Aragon, Judy Aragon, and Steven Hickox owned

these two entities in 2014 and 2015. Docket 3-1 at 2, ¶ 7. Because the two entities

elected to be treated as pass-through entities for tax purposes, the results of an audit

could affect their owners' income taxes. As a result, the IRS opened civil audits of the

2014 and 2015 returns for the Aragons and Mr. Hickox. *Id.* at 3, ¶ 11. In relation to the

audit, Tyler Pringle, an IRS revenue agent, informed petitioners that his department had made a determination that petitioners were trafficking in a controlled substance and that Revenue Agent Pringle sought records to establish the extent of petitioners' activities. Docket No. 1 at 3; Docket No. 3-1 at 3, ¶ 12.  In response to Revenue Agent Pringle's requests, petitioners provided only "minimal, incomplete, and redacted financial and other records."  Docket No. 3-1 at 4, ¶ 13.  Revenue Agent Pringle issued summonses to Colorado's Marijuana Enforcement Division ("MED"), seeking "books, records, papers, and other data, including METRC [Marijuana Enforcement Tracking Reporting and Compliance] annual gross sales reports, transfer reports, annual harvest reports, and monthly plants inventory reports."  *Id*. at 4-5, ¶ 17.  Petitioners now seek to quash those summonses, Docket No. 1, and the government seeks to enforce the summonses.  Docket No. 3.[1]

## II.  DISCUSSION

In order to enforce a summons, the IRS must show that the "investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS] Commissioner's possession, and that the administrative steps required by the [Tax] Code have been followed—in particular, that the 'Secretary [of the Treasury] or his delegate,' after investigation, has determined the further examination to be necessary and has notified

---

[1] While this lawsuit was pending, the IRS expanded its audit of petitioners to include the 2016 tax year and issued additional summonses to MED.  Petitioners filed a second lawsuit challenging those summonses, raising many of the same arguments that they raise here.  *See Medicinal Wellness Center, LLC v. United States*, No. 18-mc-00031-PAB ("*Medicinal Wellness Center II*").  The Court issues its order in that case simultaneously with this Order.

the taxpayer in writing to that effect." *United States v. Powell*, 379 U.S. 48, 57-58

(1964).[2]  The IRS's burden "is a slight one because the statute must be read broadly in

order to ensure that the enforcement powers of the IRS are not unduly restricted."

*United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985)

(citation omitted).  "The requisite showing is generally made by affidavit of the agent

who issued the summons and who is seeking enforcement."  *Id*. (internal quotation

marks omitted).[3]

　　　If the IRS makes the *prima facie* showing required under *Powell*, the burden

shifts to the party resisting enforcement, whose "burden is a heavy one."  *Balanced Fin.

Mgmt., Inc.*, 769 F.2d at 1444 (citing *United States v. Garden State National Bank*, 607

F.2d 61, 68 (3d Cir. 1979)).  The party resisting enforcement must establish a defense,

show a lack of good faith on the part of the IRS, or "prove that enforcement would

constitute an abuse of the court's process."  *Id*. (internal quotation marks omitted).

---

[2] Additionally, the IRS is barred from issuing or enforcing summonses under the Internal Revenue Code "with respect to any person if a Justice Department referral is in effect with respect to such person."  26 U.S.C. § 7602(d) (I.R.C. § 7602(d)).  Petitioners do not dispute Revenue Agent Pringle's declaration that there is no Justice Department referral in effect in relation to them.  *See* Docket No. 3-1 at 5, ¶ 24.

[3] Petitioners assert that the Court cannot consider the declaration from Revenue Agent Pringle without converting their motion to dismiss into a motion for summary judgment.  Docket No. 7 at 10.  When, in a summons enforcement proceeding, the issue is whether the government presented a *prima facie* case under *Powell*, the traditional summary judgment standard applies.  *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1180 (10th Cir. 2019) (applying *Jewell v. United States*, 749 F.3d 1295, 1297 n.1 (10th Cir. 2014)).  However, a taxpayer must factually oppose the government's allegations by affidavit or present a proper affirmative defense to defeat the government's *prima facie* case.  *Id*. at 1183.  "The traditional summary-judgment standard [does] not permit [petitioners] to rest on conclusory statements in the summary judgment record."  *Id*. at 1181.

### A. Legitimate Purpose

The government provides a declaration from Revenue Agent Pringle stating that he served the summonses in relation to an "examination of the federal tax liabilities" of petitioners and that petitioners operate at least one marijuana retail dispensary and two marijuana grow facilities, where they sell medicinal and recreational marijuana. Docket No. 3-1 at 2, ¶ 5-6. The government argues that its investigation of whether petitioners' income derives from the sale of marijuana is a legitimate purpose in light of the bar on deductions and credits for businesses trafficking in controlled substances under Internal Revenue Code § 280E. Docket No. 3 at 9-10.

Petitioners argue that the summonses do not have a legitimate purpose because Congress did not empower the IRS to investigate violations of federal criminal drug laws. Docket No. 7 at 12. This argument is unavailing because petitioners have not shown that a criminal investigation is pending or that the summonses are connected to a criminal investigation. The Tenth Circuit has rejected the argument that the IRS lacks authority to determine whether petitioners are trafficking in a controlled substance. *See Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1121 (10th Cir. 2017) ("But § 280E has no requirement that the Department of Justice conduct a criminal investigation or obtain a conviction before § 280E applies." (citing *Alpenglow Botanicals, LLC v. United States*, No. 16-cv-00258-RM-CBS, 2016 WL 7856477, at *4 (D. Colo. Dec. 1, 2016))); *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1197 (10th Cir. 2018) ("[I]t is within the IRS's statutory authority to determine, as a matter of civil tax law, whether taxpayers have trafficked in controlled substances.");

*High Desert Relief, Inc.*, 917 F. 3d 1170, 1185. While the IRS may lack authority to criminally prosecute petitioners for trafficking in controlled substances, the IRS has authority to make determinations about whether deductions are allowable under the Internal Revenue Code ("I.R.C."), including § 280E. Revenue Agent Pringle's affidavit establishes that the summonses are related to an investigation of petitioners' tax liabilities, something within the IRS's authority. Docket No. 3-1 at 2, ¶ 4.

Regardless of whether there is an active criminal investigation, petitioners contend that the IRS is required to grant them absolute immunity from criminal prosecution before issuing the summonses. Docket No. 7 at 13. Petitioners argue that the statutory scheme of I.R.C. § 280E creates a "constitutional difficulty" because compelling a taxpayer to turn over the requested information implicates a taxpayer's Fifth Amendment privilege against self-incrimination. *Id*. at 2; *see also Medicinal Wellness Center II*, Docket No. 12 at 21-26 (petitioners' petition expanding on the same argument).[4] Petitioners repeatedly contend that this situation is "the IRS [having authority] to administratively investigate and determine nontax crimes." Docket No. 7 at 13. In response, the government contends that: (1) § 280E, as it governs voluntary deductions, does not compel taxpayers to disclose any information; (2) taxpayers do not have Fifth Amendment rights in records voluntarily provided to a third party; and (3) petitioners do not identify a "genuine hazard" of self-incrimination. *Medicinal Wellness Center II*, Docket No. 15 at 11-14.

_____

[4] Although petitioners raise this argument briefly in this case, the argument is more well-developed in the briefing for *Medicinal Wellness Center II*. As this argument turns on a question of law, the Court will rely on briefing from both cases in resolving petitioners' argument.

"[T]he Fifth Amendment protects against compelled self-incrimination, not the disclosure of private information." *Fisher v. United States*, 425 U.S. 391, 401 (1976) (quoting *United States v. Nobles*, 422 U.S. 225, 233 n.7 (1975)) (internal punctuation omitted). Relying on this understanding of the Fifth Amendment, the Tenth Circuit in *In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115 (10th Cir. 1983), concluded that an individual could not assert a Fifth Amendment privilege to quash a subpoena directed at a third party. The Tenth Circuit found that "[t]here can be no violation of one's Fifth Amendment right not to testify against oneself where the records are in the hands of a third party; hence, one cannot complain on this ground about a subpoena directed to third parties to produce records." *Id*. at 117. The Court follows that logic here. Petitioners seek to quash summonses, which, like subpoenas, direct that information be produced by a witness. The summonses request information voluntarily provided by the petitioners to the MED. *See* Docket No. 3-1 at 4, ¶ 15 (noting that "marijuana growers and dispensaries must account for all marijuana plants and products through the METRC system"). Therefore, petitioners do not have a Fifth Amendment privilege with respect to the information requested by the summonses because the information is in the hands of a third party. *See First Nat'l Bank*, 701 F.2d at 117. Accordingly, the Court concludes that there is no requirement that the IRS provide a grant of absolute immunity before issuing a summons for information from third parties because taxpayers do not have a Fifth Amendment privilege with respect to that information.[5]

---

[5] Although petitioners' lack of a Fifth Amendment privilege with regard to records held by third parties is dispositive of this issue, the Court notes that petitioners' argument that § 280E compels disclosure of information is not persuasive. As the Tenth Circuit recently noted, the tax scheme does not require anyone to claim

As the government has met its burden, and petitioners' arguments that rebut the government's *prima facie* case fail, the Court finds that the government has met its burden to show that its investigation of petitioners is being conducted for a legitimate purpose.

## B.   Relevant to the Legitimate Purpose

The government argues that the information it seeks is relevant because it will "shed light on [petitioners'] correct income . . . for the 2014 and 2015 tax years by substantiating, or contradicting, these entities' sales and inventory figures."  Docket No. 3 at 14.  Revenue Agent Pringle's declaration explains that the information it seeks "can establish whether a marijuana business properly reported its gross receipts and allowed deductions for cost of goods sold."  Docket No. 3-1 at 4, ¶ 15.  Other than suggesting that Revenue Agent Pringle has not explained why the reports are necessary, petitioners do not contest the relevance of the information sought.  Docket No. 1 at 4.  Petitioners, however, cite no authority for the proposition that the IRS must establish that the information sought is necessary as opposed to merely potentially relevant.  *Id*.; *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) ("The language 'may be' [in 26 U.S.C. § 7602] reflects Congress' express intention to allow the IRS to obtain

---

deductions on his or her tax returns.  *See Green Solution Retail, Inc.*, 855 F.3d at 1121 ("Deductions . . . are not a matter of right.  Neither do they turn upon equitable considerations.  They are a matter of legislative grace.") (citing *United States v. Akin*, 248 F.2d 742, 743 (10th Cir. 1957)).  It was petitioners' choice to take deductions under § 280E on their tax returns; any investigative action taken by the IRS in response is a consequence of petitioners' voluntary decision.  *See also Alpenglow Botanicals*, 2016 WL 7856477 at *6 (concluding that, because the IRS obtained information to make a tax-based determination rather than criminal wrongdoing, petitioners failed to allege a plausible Fifth Amendment claim).

items of even *potential* relevance to an ongoing investigation, without reference to its admissibility."); *cf. Powell*, 379 U.S. at 53 (holding that the IRS need not make a "showing of cause" to carry out an investigation).  As Revenue Agent Pringle's uncontradicted declaration explains how the records he seeks are relevant to determining petitioners' tax obligations, the Court finds that the government has shown the information it seeks is relevant to its legitimate purpose of examining petitioners' federal tax liability.  Docket No. 3-1 at 4, ¶¶ 15-16.

## C.   The IRS Does Not Already Have the Information Sought

Revenue Agent Pringle states that the IRS did not possess the information sought when he requested the summons, and that the MED has not produced the requested information.  Docket No. 3-1 at 5-6, ¶¶ 20-21, 28-29.   As petitioners do not challenge the government's *prima facie* showing on this factor, the Court finds that the government has shown that the IRS does not already have the information sought.

## D.  Required Administrative Steps

In their petition, petitioners claim that the government had not shown that the IRS followed the required administrative procedures because "[t]here is nothing in the record to show that the IRS has served the individual taxpayers with a Notice of Audit or has even opened an audit on any of the individuals."  Docket No. 1 at 5.  The government, however, provides relevant written notices of audit addressed to petitioners.  Docket No. 3-2 at 6-7.  Further, the government provides copies of the document requests, the summonses, and certifications that Revenue Agent Pringle served the summonses and served notice on the taxpayers.  Docket No. 3-2.  Finally,

Revenue Agent Pringle states that the summonses were issued in compliance with the administrative steps required by the Internal Revenue Code. Docket No. 3-1 at 5-6, ¶ 23, 31. Petitioners do not contest that this element is satisfied in their response.[6] *See* Docket No. 7. The Court finds that this element is satisfied and, accordingly, that the government has met its burden under *Powell*.

### E.   Lack of Good Faith or Abuse of Process

Petitioners argue that, notwithstanding the government's *prima facie* case, the summonses should not be enforced because the IRS has not acted in good faith in issuing the summonses. Docket No. 7 at 18. Petitioners also argue that the summonses are unreasonable and unenforceable because they are overbroad, the summonses force the MED to prepare documents that do not exist, the summonses would violate petitioners' Fourth Amendment rights, and the summonses require the commission of a state law crime. *Id*. at 13-19. None of these arguments has merit.

First, petitioners allege that "[i]t is not in good faith to allege and investigate by way of summons inherently criminal activity and fail to refer the matters to the [Department of Justice]." *Id*. at 18. As noted above, the IRS can enforce IRC § 280E even absent a criminal conviction or prosecution. *See Green Sol. Retail, Inc.*, 855 F.3d

---

[6] The government alleges that petitioners and their counsel knew, at the time of filing the petition, that the notices had been issued to petitioners because some of the exhibits submitted with the petition were originally attached to the notice of audit. Docket No. 3 at 16-17. Petitioners do not respond to this contention in their response. The Court reminds petitioners and their counsel that Fed. R. Civ. P. 11(b)(3) requires that litigants certify that any factual contentions have evidentiary support to the best of the person's knowledge information, and belief. *See also* Fed. R. Civ. P. 11(c)(3) (permitting the court to *sua sponte* order an attorney, law firm, or party to show cause why conduct has not violated Rule 11(b)).

at 1121; *Alpenglow Botanicals*, 894 F.3d at 1197; *High Desert Relief, Inc.*, 917 F.3d at 1185-86.  Thus, there is no basis to conclude that the IRS is harassing petitioners without a proper purpose by issuing the challenged summonses.  *See Villarreal v. United States*, 524 F. App'x 419, 423 (10th Cir. 2013) (unpublished) (rejecting as conclusory a taxpayer's claim that the IRS's subpoena of bank records was a "harassment campaign").

Petitioners next claim that the summonses are overbroad because they constitute a "fishing expedition" on third-party records, specifically, licenses held by the Medical Wellness Center's owners.  Docket No. 7 at 17 (quoting *United States v. Coopers & Lybrand*, 550 F.2d 615, 619-20 (10th Cir. 1977)).  "A summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the ends sought."  *Coopers & Lybrand*, 550 F.2d at 621.  Here, Revenue Agent Pringle states that this information will "verify that [petitioners] own [the Medical Wellness Center] and Medicinal Oasis."  *See* Docket No. 3-1 at 6, ¶ 25.  The Court finds that this request does not constitute a fishing expedition, as the government has shown that the information (licenses held) is proportionate to the ends sought (confirming whether the Aragons and Mr. Hickox own the entities).  *See Coopers & Lybrand*, 550 F.2d at 621.  Therefore, this argument fails.

Next, petitioners contend that the summonses would force the MED to "create documents," which is beyond the summoning power of the IRS.  Docket No. 7 at 19.  This argument also fails.  As another court in this district has observed:

> Put simply, the summons requests what the summons requests.  Should the items requested exist and be in MED's possession, then MED should

> be expected to produce that which has been requested.  To take the
> analogy used by respondent, should MED possess something akin to a
> bank statement . . .  then compliance with the summons should be
> expected.  If, however, the summons should require MED to produce a
> report that it would not ordinarily or otherwise produce from its database
> of information, then respondent very well may find itself having to process
> that information itself.  In other words, in such a situation, MED may only
> need to produce the entirety of the database of information because that
> is the only document or data source that MED has created and
> possesses.

*See Rifle Remedies, LLC v. United States*, No. 17-mc-00062-RM, 2017 WL 6021421 at

*2 (D. Colo. Oct. 26, 2017).  While the IRS cannot compel the MED to create

documents, this does not mean that enforcing the summonses would indicate either a

lack of good faith or an abuse of process by the IRS.  *See id*.

Separately, petitioners argue that the summonses violate their Fourth

Amendment rights.  Docket No. 7 at 13-16.  Petitioners argue that they have a

reasonable expectation of privacy in the METRC records, and the IRS compelling MED

to turn over that information amounts to an unconstitutional search.  *Id*.

The Fourth Amendment provides that the "right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures . . . shall not be violated."  U.S. Const. amend. IV.  The Fourth Amendment

protects "what [one] seeks to preserve as private, even in an area accessible to the

public," but not "[w]hat a person knowingly exposes to the public, even in [his or her]

own home or office."  *Katz v. United States*, 389 U.S. 347, 351 (1967).  In examining

whether a person's Fourth Amendment rights are violated, courts ask "whether the

person claiming the constitutional violation had a legitimate expectation of privacy in the

premises searched."  *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (citing *Rakas*

*v. Illinois*, 439 U.S. 128, 133 (1978)) (internal quotations omitted).

In *United States v. Miller*, 425 U.S. 435 (1976), the Supreme Court concluded that the Fourth Amendment did not protect documents provided by respondent to his bank from an IRS summons. The Supreme Court reasoned that "[t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the [g]overnment . . . even if the information is revealed on the assumption that it will be used only for a limited purpose." *Id.* at 443. The Supreme Court rejected an argument that the Bank Secrecy Act's requirement that certain records be kept by banks changed the Fourth Amendment analysis because the depositor still "voluntarily conveyed" the information to the bank. *Id.* at 442.

The Court concludes that the same logic applies in this case. Petitioners "reveal[ed their] affairs to another," thus taking the risk that the third party would convey that information to the government. *Id.* at 443. Although petitioners contend that they do not "voluntarily" give this information to the MED, because it is required by Colorado law, petitioners are not required or forced to engage in business activities that make them subject to the MED's requirements. *See* Docket No. 7 at 15. As in *Miller*, the fact that the law requires the MED to obtain certain information does not impact the Fourth Amendment analysis. *See Miller*, 425 U.S. at 443. The petitioners willingly gave information to a third party so they could engage in business activities. By "knowingly expos[ing]" this information, petitioners forfeited their reasonable expectation of privacy in that information under the Fourth Amendment. *See Katz*, 389 U.S. at 351. Accordingly, the IRS does not – as petitioners contend – need a warrant and a finding

of probable cause to issue a summons for the METRC data.  *See* Docket No. 7 at 16.

Finally, petitioners suggest that enforcing the summons would compel individuals to commit a state law crime.  Docket No. 7 at 18-19.  Under Colorado law, disclosure of METRC information is a state law class 1 misdemeanor.  *See* Colo. Rev. Stat. § 44-11-201(4).  The statute provides that "[a]ny person who discloses confidential records or information in violation of the provisions of this article . . . commits a class 1 misdemeanor," and that employees of the MED must "[m]aintain the confidentiality of reports or other information obtained from a medical or retail licensee . . . from public inspection pursuant to state law."  Colo. Rev. Stat. §§ 44-11-201(4) and 202(1)(d).  Petitioners fail to show how the MED providing the METRC information to the IRS is allowing for "public inspection," given that the Internal Revenue Code provides that "[r]eturns and return information shall be confidential."  *See* I.R.C. § 6103(a).  Further, the Court observes that this is not the first proceeding where either courts in this district or the Tenth Circuit have enforced summonses to the MED.  *See Green Sol. Retail, Inc. v. United States*, No. 16-mc-00137-PAB, 2018 WL 1305449 (D. Colo. Feb. 12, 2018); *Futurevision, LTD v. United States*, No. 17-mc-00041-RBJ, 2017 WL 2799931 (D. Colo. May. 25, 2017); *Rifle Remedies*, 2017 WL 6021421; *Green Sol Retail, Inc.*, 855 F.3d 1111.  Petitioners have not indicated that the MED itself has objected to any of these enforced summonses.  Accordingly, petitioners have not persuaded the Court that this statute applies here.

If a taxpayer "cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an

evidentiary hearing" because holding such a hearing "would be a waste of judicial time and resources." *Balanced Fin. Mgmt.*, 769 F.2d at 1444. Because petitioners have failed to present factual support for their claims that the IRS is not acting in good faith or is abusing the process, the Court finds that petitioners have not met their burden and will enforce the summonses. Therefore, petitioners' petition to quash the summons will be dismissed.

## III. CONCLUSION

Accordingly, it is

**ORDERED** that petitioners' Petition to Quash Summonses [Docket No. 1] is **DISMISSED**. It is further

**ORDERED** that the United States' Motion to Dismiss Petition and Enforce Summonses [Docket No. 3] is **GRANTED**. The summonses issued to the Colorado Marijuana Enforcement Division are **ENFORCED** pursuant to 26 U.S.C. § 7604. It is further

**ORDERED** that this case is closed.

DATED April 24, 2019.

BY THE COURT:

_s/Philip A. Brimmer_____
PHILIP A. BRIMMER
Chief United States District Judge